IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THERESA CASTRO, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 20-567 |
| | ) |
| WENDY'S OF BOWLING GREEN, | ) |
| INC.; CARLISLE CORPORATION, | ) |
| et. al. | ) |
| | ) |
|    Defendants. | ) |

## AMENDED NOTICE OF REMOVAL

Defendant, Carlisle Corporation, now known as Carlisle, LLC, gives notice of its filing this Amended Notice of Removal of this action from the Circuit Court of Mobile, Alabama, to the United States District Court for the Southern District of Alabama, Southern Division, as authorized by 28 U. S. C. §§ 1332, 1441, and 1446. As grounds for removal, Defendant shows the Court the following:

THE REMOVAL IS TIMELY

1. This civil action was commenced by the filing of a complaint in the Mobile Circuit Court on October 20, 2020, where it was assigned case number CV-2020-902121. Less than one year has elapsed since the filing of the Complaint.

2. The defendant Carlisle Corporation was served with the summons and complaint on October 26, 2020. The original Notice of Removal filed with this Court was filed on November 24, 2020, within 30 days of service of process.

## COMPLETE DIVERSITY OF CITIZENSHIP EXISTS

3. There is a single plaintiff in this action, identified as Theresa Castro. Paragraph 1 of the Complaint states that plaintiff Castro is "a resident citizen of the State of Alabama." (See process and pleadings made in the Circuit Court attached to the Original Notice of Removal as Exhibit A). Therefore, for purposes of diversity and removal jurisdiction, Plaintiff is a citizen of Alabama and no other state.

4. Carlisle Corporation is now known as Carlisle, LLC ("Carlisle"). (See Par. 2, Second Declaration of Chancellor G. Carlisle, CEO and Manager of Carlisle, LLC, attached hereto as Exhibit F). Carlisle, LLC is a citizen of Tennessee, for the purposes of diversity and removal jurisdiction, and has diverse citizenship from the Plaintiff. The Complaint admits that Carlisle is a citizen of Tennessee alleging that Carlisle "is a business organized under the laws of Tennessee". (Par. 3, Complaint). Carlisle's principal place of business, further, is in Tennessee. (Par. 3, Exh. F).

5. The members of Carlisle, LLC are Chancellor G. Carlisle and the Gene D. Carlisle Family Trust f/b/o Chancellor G. Carlisle ("the Trust"). (See Par. 5, Exh. F).

6. Chancellor G. Carlisle is a resident citizen of the State of Tennessee. (Par. 4, Exh. F).

7. Chancellor G. Carlisle is also the sole trustee and sole beneficiary of the Trust, which is the only other member of Carlisle, LLC. (Pars. 5-6, Exh. F). The Settlor of the Trust was Chancellor's father, Gene D. Carlisle, who died in 2015

and was a resident citizen of the State of Tennessee at the time of his death. (Par. 7, Exh. F).

8.  As Chancellor G. Carlisle is both sole trustee and sole beneficiary of the Trust and as Chancellor G. Carlisle is a citizen of Tennessee, the Trust is a citizen of Tennessee for diversity jurisdiction purposes. *Arthur v. JP Morgan Chase Bank, NA*, 569 F. App'x 669, 674 (11th Cir. 2014) (Where sole trustee, settlor, and beneficiary of a family trust was a citizen of California, trust was a citizen of California for diversity purposes).

9.  Accordingly, as each member of Carlisle, LLC is a resident of Tennessee, Carlisle, LLC is a citizen of Tennessee for diversity purposes. *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) (per curiam);

10.  Defendant Wendy's of Bowling Green, Inc., is a Kentucky Corporation with its principal place of business in Bowling Green, Kentucky. (See Consent to Removal of Wendy's of Bowling Green, attached to the original Notice of Removal as Exhibit C).

11.  The Complaint identifies a number of fictitiously-named parties as defendants. For purposes of removal the citizenship of such defendants "shall be disregarded." 20 U.S.C. § 1441(b).

12.  In summary, Plaintiff is a citizen of Alabama, and no other state, and no defendant is an Alabama citizen. There is complete diversity of citizenship.

## AMOUNT IN CONTROVERSY

13. Nowhere in the Complaint, neither in the individual counts nor at the Complaint's foot, is there a demand for a particular amount of damages. This type of "indeterminate" prayer for relief is no barrier to a diversity-based removal, as has been discussed by the Supreme Court.

14. In *Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 89, 135 S. Ct. 547, 554, 190 L. Ed. 2d 495 (2014), the Supreme Court stated, regarding the amount-in-controversy allegations in a Notice of Removal:

> In sum, as specified in § 1446 (a) a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446 (c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation.

*Id*. at 554.

15. In this case, there is more than a plausible allegation, and in fact, there is a preponderance of the evidence, that the amount in controversy in this action, exclusive of costs in interest, exceeds $75,000.

16. There are several clear indicia that the jurisdictional amount is present here. First, in Alabama and Mobile County practice, a circuit civil plaintiff has a filing fee choice break line at $50,000. For "Civil suits up to $50,000", the filing fee for one plaintiff is $260.00 ($215.00 + $45.00). (See "Thirteen Judicial Court of Alabama, Serving Mobile County" website, Page, "Circuit Civil Division – Filing Fees", attached to the original Notice of Removal as Exhibit D;  See also Code of Alabama § 12-19-71(a)(4)). For "Civil suits exceeding $50,000", the filing fee for

one plaintiff is $360.00 ($315.00 + $45.00). In this case the sole Plaintiff Theresa Castro elected to pay the filing fee of $315.00 plus $45.00, for claims exceeding $50,000. (See Alacourt.com, Fee Sheet 02-CV-2020-902121.00, attached to the original Notice of Removal as E).

17. Moreover, prior to filing suit, counsel for the Plaintiff made statements in a pre-suit demand letter of May 19, 2020 regarding the value of this case which clearly demonstrate that the amount in controversy exceeds $75,000. (See Exhibit 1 to First Declaration of Chancellor Carlisle attached to original Notice of Removal as Exhibit B).

18. The law is reasonably well defined in this district and elsewhere in this circuit that a pre-suit demand letter may provide substantial evidence of the actual amount in controversy. *Benandi v. Mediacom Se., LLC*, No. CIV.A. 11-00498-CG-N, 2011 WL 5077403, at *2 (S.D. Ala. Sept. 30, 2011), report and recommendation adopted, No. CIV.A. 11-00498-CG-N, 2011 WL 5077108 (S.D. Ala. Oct. 24, 2011). In personal injury cases before this Court, Plaintiff's demand letters are relevant in considering whether the amount in controversy requirement is satisfied. *Sims v. Valluzzo*, No. 16-0161-WS-B, 2016 WL-3211430 (S.D. Ala. June 9, 2016).

19. This Court has found that settlement offers consisting of "puffing and posturing" are entitled to little weight in satisfying the burden of establishing the amount in controversy. *Jackson v. Select Portfolio Servicing, Inc.*, 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009). However, settlement offers furnishing "specific information" supporting the claim suggest that the plaintiff is "offering a reasonable

assessment" of the value of their claim, and are "entitled to more weight." *Id.*

20. In this case, the Plaintiff's settlement demand set out in the letter of March 19, 2020 was not mere puffing or posturing but instead offered specific information supporting the claim.

21. First, the letter sets out the specific information regarding the level of treatment that had been performed to date on the Plaintiff:

> Our client immediately sought treatment at Providence Hospital. and then was diagnosed with a fractured left wrist and partial tear of her left shoulder. An orthopedic surgeon performed surgery on September 27, 2019 to repair her wrist. She was ordered to attend physical therapy after recovering from her surgery, but was unable to do so.

(Exh. 1 to First Carlisle Declaration).

22. Furthermore, the letter specifically indicates that even after surgery had been performed on the Plaintiff, she nonetheless was continuing to suffer from severe pain and would never return to her previous level of function:

> She is currently suffering severe pain on a daily basis as a result of the injuries sustained.
>
> Our client will likely never return to the level of function she experienced before the fall.

(Exh. 1 to First Carlisle Dec.).

23. Furthermore, the letter contains a detailed itemization of the bills that the Plaintiff has incurred to date which totaled $35,274.96. (Exh. 1 to First Carlisle Dec.). Additionally, the letter indicates Plaintiff's counsel's opinion "that this case has a reasonable settlement value of $200,000". Obviously, this letter was not a mere demand, but plaintiff's counsel assessment of what the case is worth. (Exh. 1

{M0309593.1}

6

to First Carlisle Dec.). Moreover, the letter is substantiated by 124 pages of medical bills and records which are organized by healthcare provider and which set out in detail the Plaintiff's complaints and medical treatment. (See Supplemental Exhibit B to Exh. 1 to First Carlisle Dec.).

24. It should also be noted that this letter was sent approximately nine months after the Plaintiff's alleged injury of June 20, 2019, and after surgery on the plaintiff's wrist was completed. Accordingly, this was not an off-the-cuff settlement demand sent shortly after the Plaintiff's alleged fall, but was a substantiated and specific assessment of the Plaintiff's claim and its alleged "reasonable settlement value".

25. The Plaintiff's settlement demand in this matter is similar to other slip/trip and fall cases where the plaintiffs' settlement demands, which were specific and substantiated by documentation, were found by this Court to be sufficient to establish the amount in controversy. See *Sims v. Valluzzo*, 2016 WL 3211430, at *3. (In action involving allegedly unreasonably safe condition of floor, where the plaintiff incurred out-of-pocket losses and $28,509.22, the plaintiff's counsel sent a specific detailed settlement demand letter demanding $295,000, the plaintiff continued to complain of constant pain and limited motion in her shoulders, the complaint sought compensatory damages for pain and suffering, emotional distress and mental anguish, and also for punitive damages, the burden of proving the amount in controversy was met); *Benandi*, 2011 WL 5077403, *3. (In trip and fall action, where medical charges to date totaled approximately $4,100 and the

estimated cost of surgery to repair the plaintiff's labral tear allegedly suffered in the incident would be $12,000 to $15,000, where plaintiff's counsel sent a settlement demand for $92,000 which was based upon the treating physicians' records, and where plaintiff sought punitive damages, the burden of proving that the amount in controversy more likely than not exceeded $75,000 was met).

26. In this case, the Plaintiff in her Complaint not only seeks damages for medical treatment, but also for physical pain, mental anguish, damages for "being prevented from going about her normal activities", for permanent injury, and for mental anguish and emotional distress. (See Complaint within Exh. A, Par. 10).

27. The Complaint further contains a claim for wantonness and for punitive damages.  It has been well-established for 75 years that, in evaluating the diversity jurisdictional amount, the potential recovery of punitive damages must be included. *See Bell v. Preferred Life Assur. Society*, 320 U.S. 238, 64 S. Ct. 5 (1943). Of course, Carlisle denies that plaintiff will recover any damages from them.  But what counts is what plaintiff will put at issue, without any discount for the possibility that plaintiff will lose. *See South Fla. Wellness, Inc. c. Allstate Ins. Co.,* 745 F.3d 1312, 1315 (11th Cir. 2014). The Plaintiff's demand letter of March, 19, 2020 clearly establishes that the Plaintiff will put in issue a claim for more than $75,000.

28. Based on the foregoing, this Court has diversity jurisdiction of this action because there is complete diversity of citizenship and the amount in controversy, exclusive of costs and interest, exceeds $75,000. The action is

removable because the Notice is timely filed and no defendant is an Alabama citizen.

## OTHER MATTERS

29. Attached as Exhibit C to the original Notice of Removal was a consent to removal signed on behalf of defendant Wendy's of Kentucky, the only other defendant who has been a party to this matter. [1]

30. A true copy of all process and pleadings served upon Carlisle in this action, as well as all other filings made in the Circuit Court, is attached to the original Notice of Removal as Exhibit A, and is made a part hereof as if fully set forth herein.

31. Promptly upon filing this Notice, defendant Carlisle will file a copy of same with the clerk of the state court, which will effect the removal.

32. 28 U. S. C. § 81 (c)(2) defines the Southern Division of the Southern District of Alabama as incorporating Mobile County, so the action is properly removed to this Court.

---

[1] Defendant Wendy's of Kentucky was dismissed on October 29, 2020 from the underlying action pursuant to a Voluntary Motion to Dismiss of the Plaintiff on the grounds that "New information has come to light which indicates that Wendy's of Bowling Green, Inc. has no affiliation with the restaurant location made the basis of this suit". (Exh. A). These Defendants would submit that Wendy's of Bowling Green was therefore fraudulently and improperly joined in the action, and as they have been dismissed, no consent was necessary, nor should they be considered in terms of determining the propriety of jurisdiction or this Notice. In any event, Wendy's of Bowling is diverse from the Plaintiff and out of an abundance of caution their consent to the removal has been obtained and filed with this Notice.

{M0309593.1}

> /s/Winston R. Grow
> WINSTON R. GROW (GROWW8522)
> Attorney for Defendant Carlisle Corporation
>
> CABANISS, JOHNSTON, GARDNER,
>   DUMAS & O'NEAL LLP
> P. O. Box 2906
> Mobile, AL 36652
> (251) 415-7300
> (251) 415-7350 (Fax)
> email: wrg@cabaniss.com

### CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of December, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

> Kirby D. Farris, Esq.
> kfarris@frplegal.com
>
> Jessica M. Zorn, Esq.
> jzorn@frplegal.com

I also placed a copy of the same in the United States mail, first class postage prepaid, addressed as follows:

> Wendy's of Bowling Green, Inc.
> c/o CT Corporation System
> 2 North Jackson Street, Suite 605
> Montgomery, AL  36104

> /s/Winston R. Grow

{M0309593.1}

10

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THERESA CASTRO, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CARLISLE CORPORATION, ET )<br>AL., )<br>)<br>Defendants. )<br>)<br>)<br>)<br>) | CIVIL ACTION NO.:<br><br>_____ |

## SECOND DECLARATION OF CHANCELLOR G. CARLISLE

I, Chancellor G. Carlisle, hereby declare as follows:

1. I am over the age of nineteen (19) years and in no way disqualified from making this declaration, which is made from personal knowledge.

2. I am CEO and Manager of Carlisle LLC ("Carlisle"), which was formerly the entity, Carlisle Corporation. I have been employed with Carlisle since 2005.

3. Carlisle was formed in Tennessee and its principal place of business is in Memphis, Tennessee.

4. I have been a resident citizen of Memphis, Tennessee since 2005.

**EXHIBIT "F"**

2.

5.  I am a member of Carlisle. The only other member of Carlisle is the Gene D. Carlisle Family Trust f/b/o Chancellor Gene Carlisle ("the Trust").

6.  I am the sole trustee and the sole beneficiary of the Trust.

7.  The Settlor of the Trust was my father, Gene D. Carlisle, who died in 2015 and was a resident citizen of the State of Tennessee at the time of his death.

8.  The Trust came into existence on December 28, 2012. The Trust is irrevocable and is currently in existence.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 8th day of December, 2020.

_____
CHANCELLOR G. CARLISLE